IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| AHMAD FLETCHER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2: 20-cv-1125 |
| | ) |
| vs. | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| ORLANDO HARPER, Warden of Allegheny County Jail, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Ahmad Fletcher ("Plaintiff") filed this pro se action pursuant to 42 U.S.C. § 1983, arising out of allegations that he was subjected to "unsanitary, unsafe, and inhumane living conditions" that placed him at risk of contracting COVID-19 while detained at Allegheny County Jail ("ACJ"). Before the Court is the Motion to Dismiss filed by Defendant Orlando Harper ("Defendant"), with brief in support (ECF Nos. 14 and 15), the Response in opposition filed by Plaintiff (ECF No. 22), and the Reply Brief filed by Defendant. (ECF No. 24). For the reasons that follow, the motion will be granted and this case will be dismissed with prejudice.

## Factual Background

At all relevant times, Plaintiff was a federal prisoner housed at ACJ during the pendency of his criminal proceedings in this Court filed at Criminal No. 19-cr-0008.[2] On July 15, 2020, he

---

[1] In accordance with the provisions of 28 U.S.C. § 636(b)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 11 and 18).

[2] Plaintiff is also serving a 120-month sentence of imprisonment received in Criminal No. 15-cr-267, United States District Court for the Northern District of Ohio.

was sentenced in this Court to a term of imprisonment of 24 months.  Post sentencing, he was transferred to FCI Butner located in Butner, North Carolina, where he remains incarcerated.

The Complaint was received and lodged by the Court on July 28, 2020.  (ECF No. 1).  The Court issued a deficiency order because the Complaint was not accompanied by either the filing fee or a motion for leave to proceed *in forma pauperis* ("IFP Motion"). (ECF No. 3).  Plaintiff subsequently cured the deficiency by filing an IFP motion (ECF No. 5), which the Court granted on September 24, 2020. (ECF No. 7). The Complaint was filed that same day.  (ECF No. 8).

Plaintiff alleges he was subjected to unsafe conditions while detained at ACJ placing him at risk of contracting COVID-19.  The sole defendant in the case is Orlando Harper, Warden of the Allegheny County Jail, who has been named in both his official and individual capacities. Plaintiff asserts that on April 20, 2020, he was made aware that inmates housed on pod 3A, the pod on which Plaintiff was housed, had tested positive for COVID-19.  According to the Complaint,  pod 3A had a larger population than other pods in ACJ and the overcrowding on pod 3A did not allow enough space for Plaintiff and other inmates to practice social distancing "creating a tinder box for the spread of the Covid-19 virus."  Complaint, at ¶ 8.  Plaintiff asserts that he filed grievances about the "unsanitary, unsafe and inhumane conditions on pod 3A" and spoke with Defendant Harper a number of times requesting to be moved off pod 3A or to be placed in a single cell.  On April 27, 2020, Plaintiff tested positive for the COVID-19 virus.

Defendant filed the instant Motion to Dismiss in which he argues that since the onset of COVID-19, "ACJ has taken timely and substantive steps to provide a safe living environment for its inmate population," and refers to policies that ACJ has implemented to mitigate and contain the spread of COVID-19 within ACJ. He also references the Consent Order issued on May 27, 2020, in the case of *Graham, et al v. Allegheny County, et al*., Civil Action No. 2:20-cv-0496, governing

ACJ's practices and procedures for handling the spread of COVID-19.  Defendant argues for all these reasons that Plaintiff has failed to state a claim and the Complaint should be dismissed.  In response, Plaintiff argues that Defendant Harper knew that he shared a cell with a high-risk inmate,[3] and that Defendant Harper should have either placed this high-risk individual "in a single cell like all other high risk inmates on pod (3A), or at least moved out of Plaintiff's cell."  P's resp. at 2. (ECF No. 22).  Defendant filed a Reply in which he contends that Plaintiff's specific complaints about his living conditions "were not unique to Mr. Fletcher, the inmates of ACJ, or even the inmates of other state correctional institutions" and "whether Plaintiff's former cellmate actually suffered from chronic asthma is completely irrelevant to this lawsuit."  Reply at 2 - 3. (ECF No. 24).

The motion is now ripe for consideration.

**Standard of Review**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d

---

[3] In response to the motion to dismiss, Plaintiff states that his cellmate suffered from chronic asthma, a condition which placed this individual in a class of "medically vulnerable" persons as defined by the CDC.

3

Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Even so, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to relief. *Twombly*, 550 U.S. at 563 n.8.

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters.

*Pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Because Plaintiff is proceeding pro se, the Court will liberally construe his Complaint and employ less stringent standards than when judging the work product of an attorney. *Erickson v. Pardus*, 51 U.S. 89, 94 (2007).

**Discussion**

Before turning the merits of the arguments, the court must "identify the specific constitutional right at issue." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017) (internal citation and quotation marks omitted). In this case, both parties address the claims as Eighth Amendment violations. However, prior to July 15, 2020, Plaintiff was confined at Allegheny County Jail ("ACJ") as a pretrial detainee. On July 15, 2020, his status changed to that of a convicted prisoner as he was sentenced on that day to a twenty-four month term of imprisonment. *See United States v. Landfried*, et al, public docket at case number 2:19-cr-0008-6, Judgment as to Ahmad Fletcher (ECF No. 2199). The Complaint in this matter is dated July 16, 2020, the day after his status changed to that of a convicted prisoner.[4] Given that Plaintiff was detained at ACJ while both a pretrial detainee and a convicted prisoner, it appears to the Court that the allegations in this case may fall under the protection of both the Cruel and Unusual Punishment Clause of the

---

[4] It is not clear when Plaintiff was transferred out of ACJ. However, on August 18, 2020, approximately a month after the case was initiated, the Court was informed that Plaintiff no longer was housed at ACJ and had been temporarily transferred to Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio, awaiting designation to a BOP facility. The IFP motion signed by Plaintiff on August 20, 2021, was mailed by Plaintiff from at NEOCC. (ECF No. 5). On September 30, 2020, the BOP Inmate Locator reflected that Plaintiff had been transferred to FCI Gilmore. On April 23, 2021, Plaintiff filed a Notice of Change of Address indicating he had been transferred to FCI Butner. (ECF No. 13).

Eighth Amendment[5] and the Due Process Clause of the Fourteenth Amendment.[6] *See Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*) (stating that claims that arose while a plaintiff was a pretrial detainee must be prosecuted under the Due Process Clause, while claims that arose after he was sentenced are analyzed under the Cruel and Unusual Punishment Clause). While recognizing that the case law is unclear as to whether the Fourteenth Amendment provides more measure of additional protections for pretrial detainees above what the Eighth Amendment affords convicted prisoners, the Court, in an abundance of caution, will analyze Plaintiff's claims under the Due Process Clause of the Fourteenth Amendment because the Court of Appeals for the Third Circuit has hinted that a pretrial detainee's "due process rights are at least as broad, if not

---

[5] The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers,* 475 U.S. 312, 318 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishment Clause does not apply until "after sentence and conviction." *Graham v. Connor,* 490 U.S. 386, 392 at n.6 (1989). It imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the United States Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of ' "the minimal civilized measure of life's necessities.' " *Id.* at 298–99 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[6] The standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate. Catherine T. Starve, The Conditions of Pretrial Detention, 161 U. Pa. L.Rev. 1009 (2013). However, the United States Supreme Court and the Court of Appeals for the Third Circuit have unequivocally held that the Fourteenth Amendment due process standard is at least as protective as the Eighth Amendment cruel and unusual punishment standard when analyzing conditions of confinement. *See Bell v. Wolfish,* 441 U.S. 520, 545 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); *Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007) ("the protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

broader, than his rights under the Eighth Amendment." *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (citing *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2010)).[7]

Under the Due Process Clause of the Fourteenth Amendment, when a pretrial detainee complains about the conditions of his confinement, courts are to consider whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard I*, 399 F.3d at 158. The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishment standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter,* 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind [.]" *Id.* at 298. . . . The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  In determining whether a condition of confinement amounts to punishment, courts look to "whether a condition is reasonably related to a legitimate governmental objective; if it is not, [the court] may infer 'that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees qua detainees'." *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019) (citing *Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) ("*Hubbard* II").

In recent cases involving COVID-19, "several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk

---

[7] Even if the Court were to analyze the claims under the Eighth Amendment, the conclusion would be the same.  Plaintiff has failed to establish a constitutional violation with regard to his conditions of confinement claim.

7

of contracting the virus." *United States v. Haskins*, No. 1:19-cr-328, 2020 WL 1974414, at *6 (M.D.Pa. Apr. 24, 2020) (collecting cases).  In considering whether conditions of confinement "amount to punishment" relative to COVID-19, courts have generally considered the detainee's health and conditions at the facility in that particular case, including whether officials have implemented adequate precautions.  *See Kendrick v. Harper,* No. 20-0740, 2021 WL 1312916 (W.D.Pa. Apr. 8, 2021) (citing cases); *Johnson v. Westmoreland County Prison*, No. 20-622, 2021 Wl 807714 (W.D.Pa. Mar. 3, 2021).

While the Court acknowledges the extremely serious health risks COVID-19 presents, particularly within the prison setting, and the fact that Plaintiff tested positive for COVID-19 while a pretrial detainee (Complaint, at ¶ 11), the Court finds that the allegations of the Complaint fail to state a claim under the Fourteenth Amendment.  While a number of the conditions as alleged by Plaintiff would be uncomfortable and unpleasant, nothing in the Complaint supports an inference that these conditions were implemented as punitive measures or lacked any reasonable relationship to a legitimate governmental objective.  Plaintiff does not plead any facts demonstrating that he faced a heightened risk beyond that of being incarcerated during the COVID-19 pandemic.  There are no allegations that ACJ officials failed to meaningfully comply with the Centers for Disease Control and Prevention or other health agency recommendations relative to COVID-19 in corrections settings or that any of the practices of ACJ were in violation of the May 27, 2020, Consent Order.  For these reasons, the Court finds that the factual allegations of the Complaint are insufficient to establish that any of the conditions Plaintiff faced while incarcerated at ACJ violated his Fourteenth Amendment rights.

Further, to the extent that Plaintiff has brought a claim against Defendant Harper in his official capacity, such a claim fails because the Complaint is void of any factual allegation that

Defendant Harper established or maintained a policy, practice, or custom which directly caused constitutional harm to Plaintiff.

## Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing discussion, the Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint.

## Conclusion

For all the above reasons, the Motion to Dismiss will be granted and the case will be dismissed with prejudice as amendment would be futile.

An appropriate Order follows.

September 20, 2021                     s/Cynthia Reed Eddy
                                       Chief U.S. Magistrate Judge